**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**HONORA HILLIER**                                                                           **PLAINTIFF**

**VS.**                                                      **CAUSE NO. 1:08-cv-00671-LTS-RHW**

**USAA CASUALTY INSURANCE COMPANY**                            **DEFENDANT**

---

**MEMORANDUM OF USAA CASUALTY INSURANCE COMPANY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

USAA Casualty Insurance Company ("USAA CIC") submits this memorandum in support of its Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56.

**I.  Introduction**

Partial Summary judgment is appropriate on several of the claims advance by the plaintiff in this case, narrowing the issues for trial.  Specifically, USAA CIC has previously paid plaintiff for all additional living expenses for which she presented documentation.  The homeowner's policy issued by USAA CIC to plaintiff covers only increased living expenses actually and necessarily incurred because of a covered loss that renders the dwelling uninhabitable.  Because the plaintiff has not, to date, produced the necessary evidence of additional living expenses actually incurred but not paid by USAA CIC, she cannot advance this claim at trial.

USAA CIC is, likewise, entitled to partial summary judgment dismissing plaintiff's claims for prejudgment interest, punitive damages, and extracontractual damages.  This case involves a legitimate dispute between the parties regarding wind-water causation of the damages to plaintiff's property.  In such circumstances, the Mississippi Supreme Court has held that prejudgment interest awards are not appropriate.  Just as prejudgment interest is inappropriate, consideration of any punitive or extracontractual damages is inappropriate in this case.  USAA

CIC possesses an arguable reason for its claims decisions concerning the cause and extent of damage to plaintiff's property.  There is no evidence or basis on which the plaintiff can prevail on an allegation that USAA CIC was negligent in handling her claim – much less an allegation that USAA CIC acted with malice, fraud, or gross negligence in handling her claim.

Finally, USAA is entitled to partial summary judgment on plaintiff's claim that it is estopped from continuing to investigate the claim and rely on additional engineers at trial, beyond those which it consulted before suit was filed.  Plaintiff's claim in this regard is directly contrary to Mississippi law, which provides that USAA CIC has a right, to continue its investigation.  Plaintiff's allegations in this regard – made in an attempt to form a basis for exclusion at trial of USAA CIC's additional engineering experts retained and timely designated after suit was filed – should be rejected as a matter of law.

## II. The Uncontradicted Facts That Support Partial Summary Judgment

At the time Hurricane Katrina struck the Gulf Coast, USAA CIC insured the plaintiff's residence, contents and other structures located at 551 E. Scenic Drive in Pass Christian, Mississippi under Homeowners Policy 00766 53 22 90A. *See* Exhibit "2," (Homeowners Policy). The limits of liability for the policy are: $610,000 for the dwelling, $518,750 for personal property, $122,000 for loss of use, $4000 for special coverage on jewelry, watches, furs and silverware, and $151,000 for appurtenant private structures (guesthouse).  The plaintiff also carried flood insurance on her main residence in the amount of $250,000 for the dwelling and $100,000 for the contents under Flood Insurance Policy No. 0766 53 22 0F.  *See* Exhibit "3," (Main Residence Flood Policy Dec Page). Additionally, the plaintiff carried flood insurance on her guesthouse in the amount of $75,000 for the dwelling and $30,000 for the contents under Flood Insurance Policy No. 0766 53 22 1F. *See* Exhibit "4," (Guesthouse Flood Policy Dec Page).

The plaintiff made claims under both the Homeowners and Flood Policies for the loss resulting from Hurricane Katrina. USAA General Indemnity Company paid the policy limits under the main residence flood policy of $250,000.00 for damage to structures and $100,000.00 for damage to contents.[1] Additionally, USAA GIC paid the policy limits under the guesthouse flood policy of $75,000 for damage to structures and $30,000 for damage to contents. *See* Exhibit "1." (Affidavit of Gary Taylor). Plaintiff accepted these payments for damage caused by flood under the flood policies. Under her homeowner's policy, the plaintiff demanded, *inter alia*, payment for all contractual benefits for all coverages afforded to plaintiff under the policy.

The plaintiff submitted documentation of additional living expenses to USAA CIC for which a total payment of $16,329.19 was issued under the plaintiff's ALE coverage. *See* Exhibit "1." (Affidavit of Gary Taylor). The plaintiff agreed to this amount as final settlement for ALE coverage on January 3, 2006. Subsequently, in November of 2006, the plaintiff requested additional ALE payments from USAA CIC. USAA CIC instructed the plaintiff that documentation was necessary before further ALE payments could be made. The plaintiff submitted additional lease agreements for $13,850 per month for May through November. In order to provide further ALE payments, USAA CIC requested that the plaintiff provide her normal living expenses for abatement purposes. USAA CIC informed the plaintiff that once the information was received further ALE payments would be addressed. To date, the plaintiff has not provided the documentation requested and necessary to determine if further ALE payments are warranted.

USAA CIC inadvertently retained the services of two engineering firms, EFI Global and HAAG, to provide a report on the cause of the damage to the plaintiff's property. HAAG's first

---

[1] **Error! Main Document Only.** USAA CIC and USAA General Indemnity Company (hereinafter "USAA GIC") are separate entities. USAA GIC is not a party to this litigation.

report was received by USAA CIC on November 11, 2005. *See* Exhibits "5" and "6," (HAAG reports issued November 11, 2005 and February 1, 2007); Exhibit "1," (Affidavit of Gary Taylor). The duplicate request was not discovered until January 11, 2006 when USAA CIC received EFI's first report. *See* Exhibits "7" and "8," (EFI Global reports issued January 11, 2006 and February 13, 2007); Exhibit "1," (Affidavit of Gary Taylor).

After USAA CIC completed its investigation, including a review of the HAAG and EFI Global reports, USAA CIC paid the following for that part of the loss which was solely caused by wind damage: $310,110.79 for the dwelling, $4742.43 for the guesthouse, $518,750.00 for contents, and $16,329.19 for loss of use. *See* Exhibit "1," (Affidavit of Gary Taylor).

In summary, the plaintiff has been paid $325,000.00 for damage to structures and $130,000.00 for damage to contents under her flood policies. Under her homeowner's policy, the plaintiff has been paid $314,853.22 for the damage caused to structures including the guesthouse and main residence, $518,750.00 for contents, $16,329.19 for additional living expenses and $4,000 for special coverage. *See* Exhibit "1," (Affidavit of Gary Taylor). Between her flood and homeowner's policies, the plaintiff has been paid $1,308,932.41. The plaintiff does not deny receipt of the above-referenced payments.

After accepting $1,308,932.41 between her flood and homeowner's policies, the plaintiff claims she is owed "payment for all contractual benefits for all coverages afforded to plaintiff under the subject USAA [CIC] policy for damage to plaintiff's insured property caused by Hurricane Katrina, with interests on all amounts due plaintiff under its policy." The plaintiff claims that the loss to her property was proximately and efficiently caused by hurricane wind, tornados, microbursts, mesocyclones, and/or convective activity thereby triggering full coverage for all of her hurricane losses. There is no allegation by the plaintiff that any of her loss was

caused by flood and that the water damage exclusion in USAA CIC's policy does not apply. Additionally, the plaintiff has requested an order estopping USAA CIC from now inspecting the insured property or retaining new or different experts to retroactively justify its conduct. The plaintiff is not entitled, as a matter of law (1) to any additional ALE payments; (2) to prejudgment interest; (3) to recovery on any of her extra-contractual and punitive damage claims. Summary judgment is appropriate on these points. Further, USAA CIC is entitled to partial summary judgment on the grounds that (4) it had not only a duty to investigate potential wind damage, but also the right to investigate. This would include USAA CIC's right to request supplemental engineer reports clarifying wind damage following filing of plaintiff's suit.

### III. The Pertinent Policy Provisions

The following policy provisions are relevant to the Court's consideration of the issues presented by this motion:

**FIRST**: The section entitled Coverages and Limits of Liability of the Amended Declarations Page on page 3 of the Homeowner's Policy Packet, (USAA.HILLIER.HOPOLICY.2231) which is attached as Exhibit "2" to this motion, reads:

| | | |
|---|---|---|
| Section I | A. Dwelling | $610,000 |
| | B. Personal Property | $518,000 |
| | C. Loss of Use | $122,000 |

**SECOND**: The Water Damage Exclusion found under Section I - Exclusions, on page 8 of policy (USAA.HILLIER.HOPOLICY.2241) which is attached as Exhibit "2" to this motion, reads in pertinent part that:

> 1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

* * *

c. Water Damage, meaning
(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind.

**THIRD**: Item 1 under Coverage D - Loss of Use, on page 3 of the policy (USAA.HILLIER.HOPOLICY.2236) which is attached as Exhibit "2," provides that:

**COVERAGE D - Loss of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. **Additional Living Expense**. If a loss covered under Section - I makes that part of the *residence premises where you reside* not fit to live in, we cover the necessary *increase* in living expenses *incurred* by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

**FOURTH**: Item 2 under SECTION I – CONDITIONS, on page 9 of the policy (USAA.HILLIER.HOPOLICY.2242) which is attached as Exhibit "2," provides that:

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you must see that the following are done:
\*\*\*
f. as often as we reasonably require:
\*\*\*
(2) provide us with records and documents we request and permit us to make copies
\*\*\*
g. send to us within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
\*\*\*
(7) receipts for Additional Living Expenses and Temporary Living Expenses incurred…

## IV. Standard for Summary Judgment

The summary judgment standard under Federal Rule of Civil Procedure 56(c) provides that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

As demonstrated below, there are no genuine issues of material fact regarding those portions of the case on which USAA CIC seeks partial summary judgment. A grant of the Motion will focus the trial issues solely on those areas of the case in which there may be genuine disputes of material fact that require resolution by a jury.

### V.   Argument

####    1:   Plaintiff Is Not Entitled to further ALE.

The homeowners policy issued to the plaintiff provides coverage for additional living expenses; however, coverage is only for (1) *the residence premises where you reside*, (2) necessary *increased* living expenses (3) and expenses *actually incurred* in the event that a covered loss (in this case wind damage) renders the dwelling uninhabitable. The additional living expenses portion of USAA CIC's policy, at Coverage D, Loss of Use, expressly provides:

> **Additional Living Expense.** If a loss covered under Section - I makes that part of the *residence premises where you reside* not fit to live in, we cover the necessary increase in living expenses *incurred* by you so that your household can maintain its normal standard of living.

Exhibit "2," p. 3 of 17. (emphasis added). As a matter of law, the plaintiff is not entitled to recovery of any further additional living expenses ("ALE").

The plaintiff is not entitled to further additional living expenses because the policy language is unambiguous in its provision that additional living expense coverage extends only to those living expenses that constitute *an increase* and that are actually *incurred*. *United Services Automobile Association v. Gordon,* 103 S.W.2d 436, 442-43 (Tex. Ct. App. 2002)(additional living expense portion of USAA homeowners policy only covers additional living expenses actually incurred by insured). *See* Policy language, Coverage D, Loss of Use, Additional Living Expenses, quoted *supra*.

The plaintiff has been paid for additional living expenses for which she submitted evidence of a particular amount of increased living expenses that they actually incurred. The plaintiff has the obligation under the policy to present USAA CIC with documentation (i.e. receipts of expenses and documents supporting their normal cost of living) of the amount of increased living expenses they actually incurred. *See* Policy language, Coverage D, Loss of Use, Additional Living Expenses; and SECTION I – CONDITIONS, quoted *supra*. The plaintiff cannot prevail on her claim for this coverage simply by stating her desire to be paid policy limits. *United Services Automobile Association v. Wade*, 544 So.2d 906, 912-13 (Ala. 1989) (insureds only entitled to recover portion of additional living expenses for which they provided proof of incurring such expenses; remittitur of award for amounts not shown to have been incurred, as such claims were speculative and not supported by evidence); *Young v. State Farm Fire & Cas.*

*Co.*, 426 So.2d 636, 644-45 (La. Ct. App. 1982), *writ denied*, 433 So.2d 171 (La. 1983) (plaintiff could not recover additional living expenses without introducing evidence of necessary increase in expenses actually incurred under State Farm policy that expressly covered only "incurred" necessary increase in living expenses). Without additional documentation supporting the plaintiff's contention that she incurred additional increases in her cost of living, further ALE payments are simply not warranted. No such additional documentation has been produced by the plaintiff in the course of this suit.

For the foregoing reasons, USAA CIC is entitled to summary judgment on the plaintiff's claim for additional living expenses against it. No genuine issue of material fact exists for trial on this issue. The uncontradicted evidence establishes that the plaintiff has been paid for all increases in living expenses for which she submitted documentation. Accordingly, USAA CIC respectfully submits that the plaintiff is not entitled to any further additional living expenses.

**2:     This Is Purely a "Pocket Book" Dispute over the Amount of Damages Covered under the Policy and the Plaintiff Is Not Entitled to Prejudgment Interest.**

One of the remedies sought by the plaintiff is prejudgment interest from the date of loss. However, as a matter of law she is not entitled to this relief, because there has not been a denial of her claim for wind damage. Rather, the amount claimed is disputed by USAA CIC in a good faith disagreement regarding how much of the loss is attributable exclusively to wind and how much is attributable to storm surge.

USAA CIC promptly investigated plaintiff's claim, requested engineering opinions to determine the cause of the loss, and based upon the engineer's findings and its investigation paid all of the wind damage.

Despite the fact that the plaintiff has been paid a substantial amount for wind damage to her home, the plaintiff filed this lawsuit arguing that the benefits paid to her by USAA CIC were not sufficient and/or were not timely paid. This is, by definition, a classic "pocket book" dispute as recognized by the Mississippi Supreme Court in *Lititz Mut. Ins. Co. v. Boatner,* 254 So.2d 765 (Miss. 1971). *Boatner* involved property damage on the Gulf Coast from Hurricane Camille. In deciding that pre-judgment interest was not recoverable and that interest would accrue only from the date of judgment, the Court said:

> In the instant case we are of the opinion that there was a genuine dispute, not only as to the amount due under the various clauses of the policy, but there was a real issue presented as to how much damage was caused by windstorm under the terms of the insurance contract. We hold, therefore, that the appellees are only entitled to statutory interest on the amount recovered from and after the date of the judgment in the trial court. The judgment in favor of appellees is affirmed.

*Id.* at 767.

*Grace v. Lititz Mut. Ins. Co.,* 257 So.2d 217 (Miss. 1972) is another case involving a dispute over the amount to be paid under an insurance policy for damage caused by Hurricane Camille. Again, the Court found pre-judgment interest was not allowable and in doing so held that *Lititz Mut. Ins. Co. v. Boatner*, *supra*, was controlling since it was a bona fide dispute as to the amount of damages and of the liability for them.

It is obvious from these cases that USAA CIC is entitled to judgment as a matter of law that interest does not accrue on the plaintiff's claim, if at all, until the date of judgment. This case involves a "pocket book" dispute as to how much is owed. Correspondingly, the amount is not liquidated so as to allow prejudgment interest. In consideration of the foregoing, plaintiff is not entitled to prejudgment interest.

> **3:** **Plaintiff's Claims For Punitive Damages, Extracontractual Damages, And Attorneys' Fees Should Be Dismissed, As There Is No Evidence That USAA CIC Acted In Bad Faith In Adjusting the Plaintiff's Claim.**

      **a.**      **Punitive Damages Cannot Be Awarded, As USAA CIC Possessed Legitimate, Arguable Reasons For Its Claims Decisions.**

For a plaintiff to succeed on a claim of bad faith and thus be entitled to punitive damages, there must be no legitimate or arguable reason for the insurer's alleged denial of plaintiff's homeowners' claim, and the insurer's conduct must have been so malicious or reckless as to rise to the level of an independent tort. *Windmon v. Marshall,* 926 So. 2d 867, 874 (Miss. 2006). The trial court should decide as a matter of law whether an arguable reason exists. *Dunn v. State Farm Fire and Cas. Co.*, 927 F.2d 869, 874 (5th Cir. 1991) (whether insurer had arguable reason to deny claims is issue of law for court to decide); *Blue Cross and Blue Shield v. Campbell*, 466 So.2d 833, 842 (Miss.1984) (on rehearing) (holding if trial court finds that insurer had arguable basis for non-payment, then bad faith issues should not be submitted to jury).

An arguable reason is one in which there is some credible evidence supporting the given reason, even if there is also evidence to the contrary. *Id.* at 851; *see also Prudential Prop. & Cas. Ins. Co. v. Mohrman,* 828 F. Supp. 432, 441 (S.D. Miss. 1993) (stating arguable reason exists if the denial is supported by at least some credible evidence, even though there may be evidence to the contrary); *Richards v. Amerisure Ins. Co.,* 935 F. Supp. 863, 867 (S.D. Miss. 1996) (citing *Campbell*, 466 So.2d at 851); *Tipton v. Nationwide Mut. Fire Ins. Co.*, 381 F. Supp. 2d 572, 579 (S.D. Miss. 2004)(citing *American Mfrs. Mut. Ins. Co. v. Cupstid*, 673 F. Supp. 186, 188 (S.D. Miss. 1987) and *Blue Cross and Blue Shield of Mississippi v. Campbell*, 466 So. 2d 833, 851 (Miss. 1984)).

The plaintiff has a heavy burden of clear and convincing evidence to demonstrate to the trial court that there was no reasonably arguable basis for the manner in which USAA CIC paid their insurance claim. Miss. Code Ann. §11-1-65(1)(a) (clear and convincing evidence of "actual

malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or [commission of actual fraud]" required to prevail on punitive damage claim).  In this case, the plaintiff cannot prevail on a punitive damage claim unless she brings forth clear and convincing evidence on which the Court could find that USAA CIC (1) denied the claim, (2) had no legitimate or arguable reason for the denial; and (3) acted with malice or gross or reckless disregard for their rights.  *Windmon,* 926 So. 2d at 874.  Unless she can make such a showing, the trial court is under a duty as a matter of law to remove from the case any punitive damages claim based on alleged bad faith.  *Campbell*, 466 So.2d at 845.  USAA CIC is entitled to partial summary judgment on the punitive damage claim because the plaintiff cannot meet this burden.  Plaintiff has no evidence, much less clear and convincing evidence, to support a claim for punitive damages.

USAA CIC promptly investigated and made its decisions on the plaintiff's claims.  As a matter of law, USAA CIC had – and has – ample credible evidence supporting its payment decisions.  On September 27, 2005, EFI Global examined the site of the plaintiff's loss at USAA CIC's behest, and opined that the plaintiff's dwelling was destroyed by storm surge and wave action forces. *See* Exhibit "7."  Specifically, EFI Global opined that windstorm forces were responsible for the displacement of the asphalt shingles covering the guesthouse front slope and moisture infiltration of the kitchen ceiling, all of which was paid by USAA CIC under the plaintiff's homeowner's policy.

On October 28, 2005, HAAG Engineering examined the site of the plaintiff's loss at USAA CIC's behest, and opined that the plaintiff's dwelling was destroyed by storm surge effects.  *See* Exhibit "5."  Specifically, HAAG advised that direct wind-caused damage would have been limited to displacement of some roofing, attendant water intrusion through the roof,

associated damage to interior ceiling architectural finishes, and possible displacement of loosely attached exterior trim components, all of which was paid by USAA CIC under the plaintiff's homeowner's policy.

Also, on February 1, 2007 and February 13, 2007, USAA CIC received HAAG and EFI Global's second reports written in response to a report written by KCE Matrix, an engineering firm, provided to USAA CIC by the plaintiff. *See* Exhibits "6" and "8." Both HAAG and EFI's second reports confirmed their initial findings and found nothing in the KCE Matrix report that changed their opinions.

That the plaintiff and/or her experts take a different position on the cause and origin of damage to her house structure does not remove these legitimate, arguable reasons for the way in which USAA CIC adjusted the plaintiff's claim. An arguable reason is simply one supported by credible evidence, regardless of whether there may be other evidence to the contrary. Credible evidence abounds to support USAA CIC's position. Because USAA CIC cannot be said to lack legitimate, arguable reasons for its adjusting decisions on the plaintiff's claim, the punitive damage claim should be dismissed.

Even assuming the court were to somehow determine that USAA CIC lacked legitimate or arguable reasons for its actions; punitive damages would still not be warranted absent evidence of a heightened tort. *Foster v. Globe Life & Acc. Ins. Co.*, 808 F.Supp. 1281 (N.D. Miss. 1992) *aff'd* 980 F.2d 1445 (5th Cir. 1992). There can be no recovery of punitive damages due to a claim for bad faith unless the insurer has acted maliciously, intentionally, or with such severe gross negligence as to amount to an independent tort. *Pedersen v. Chrysler Life Ins. Co.*, 677 F. Supp. 472 (N.D. Miss. 1998); *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992). Ordinary or simple negligence is not enough to warrant the imposition of punitive

damages against an insurer.  *Dueringer v. General American Life Ins. Co.*, 842 F.2d 127 (5th Cir. 1988).

The plaintiff has presented no evidence indicating that USAA CIC committed any willful or malicious wrong or acted with gross, reckless disregard for her rights.  The evidence regarding USAA CIC's actions shows that USAA CIC made an effort to fully and promptly investigate the claim and pay what was owed under the plaintiff's homeowner's policy.  That the parties simply disagree about the results of USAA CIC's investigation is not grounds for an award of punitive damages.  The plaintiff's claim for punitive damages should be denied and partial summary judgment granted on this issue.

### b. For the Same Reasons, the Claims for Extracontractual Damages And Attorneys' Fees Should Be Dismissed.

Similar to a bad faith claim for punitive damages, damages for emotional distress and/or attorneys fees and expenses are generally not recoverable in an action for breach of contract absent proof of an independent intentional tort.  *State Farm Fire & Cas. Co. v. Simpson*, 477 So.2d 242, 253 (Miss. 1985);  *Bellefonte Ins. v. Griffin*, 358 So.2d 387, 391 (Miss. 1978).

Nevertheless, in *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992), the Mississippi Supreme Court held that an award of extracontractual tort damages might be proper in a case in which an insurer acted negligently in denying a claim.  *Id.* at 295.  In other words, *Veasley* indicated that an award of extracontractual damages may be proper in a case in which an insurer lacks a legitimate or arguable reason for its actions, even though those actions do not rise to the level of bad faith.  *Id*.  In *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450 (5th Cir. 2008), the Fifth Circuit made an Erie guess that such extracontractual damages could include attorneys fees and expenses.

There is, however, no evidence in this case to support a finding that USAA CIC acted negligently with regard to the plaintiff's claim. As previously discussed, the undisputed evidence shows, to the contrary, that USAA CIC had a legitimate and arguable reason for its decisions. Under *Veasley*, the presence of an arguable reason for USAA CIC's claims decision negates any allegation of negligence. *Veasley*, 610 So. 2d at 295. Accordingly, USAA CIC is entitled to partial summary judgment as to the claim against it for emotional distress damages and attorneys' fees and expenses. There is no basis in this case for such an award.

> **4:** **USAA CIC Had The Right To Investigate, Including The Right To Request Supplemental Engineer Reports Clarifying Wind Damage.**

The plaintiff alleges that USAA CIC should be estopped from now inspecting the insured property or retaining additional experts for trial to "retroactively justify" its conduct. However, Mississippi, as well as multi-jurisdictional, case law indicates that USAA CIC had the right, as part of its investigation of the claim, to investigate the cause of damage. *See Farmer v. Allstate Ins. Co.*, 396 F. Supp. 2d 1379, 1382 (N.D. Ga. 2005) (insurer has right to investigate cause of fire before deciding whether to pay claim); *Kubrick v. Allstate Ins. Co.*, 2004WL45489, slip op. at *12 (E.D.Pa. Jan. 7, 2004) (insurer "entitled to investigate legitimate defenses against claims by its insureds"); *Jackson v. State Farm Mut. Auto. Ins. Co.*, 880 So. 2d 336, ¶ 22 (Miss. 2004) (insurance company's right to investigate claim is valuable).

USAA CIC clearly had the right, under Mississippi law, to retain and rely on additional experts to review and provide opinions concerning the plaintiff's claims. Rather than constituting an attempt to retroactively justify some previously unsupported claims decision, USAA CIC's retention of additional experts was part of the normal course of continuing to examine the claim and contend with the fact that the claim was placed in suit by the plaintiff.

Accordingly, because USAA CIC did, in fact, have the right to conduct further investigation into the extent of damages caused by wind, as well as the right to defend itself in this suit, USAA CIC is entitled to partial summary judgment on this issue.

## VI.  Conclusion

USAA CIC respectfully requests that the Court find as a matter of law that the plaintiff is not entitled to further additional living expenses; that the issue between the parties is a legitimate dispute over the amount of damage caused exclusively by wind, precluding an award of prejudgment interest; that the plaintiff is not entitled to recover punitive damages or on any of her other extra-contractual claims; and that USAA CIC has a right to continue to investigate the plaintiff's claim, including a right to request supplemental engineering opinions, and that USAA CIC is entitled to partial summary judgment as to each of the issues presented in this Motion.

**EXHIBITS**

In support hereof, USAA CIC submits the following exhibits and incorporates them herein by reference:

> Exhibit 1: Affidavit of Gary Taylor;
>
> Exhibit 2: Certified Copy of USAA CIC Homeowners Policy 00766 53 22 90A;
>
> Exhibit 3: Certified Copy of USAA GIC Flood Policy 0766 53 22 0F Dec. Page;
>
> Exhibit 4: Certified Copy of USAA GIC Flood Policy 0766 53 22 1F Dec. Page;
>
> Exhibit 5: HAAG Engineering Report issued November 11, 2005;
>
> Exhibit 6: HAAG Engineering Report issued and February 1, 2007;
>
> Exhibit 7: EFI Global Report issued January 11, 2006;
>
> Exhibit 8: EFI Global Report issued February 13, 2007.

-17-

WHEREFORE, PREMISES CONSIDERED, Defendant, USAA CIC, respectfully requests that an Order be entered consistent with the foregoing. Defendant would request any other relief to which it may be entitled to on the premises.

Respectfully submitted this the 3rd day of November, 2009.

        **USAA CASUALTY INSURANCE COMPANY**

        By:    /s/ Charles P. Copeland_____
              ROBERT P. THOMPSON (MSB#8188)
              CHARLES P. COPELAND (MSB#135240)

Of Counsel:

**COPELAND, COOK, TAYLOR AND BUSH, P.A.**
600 Concourse, Suite 100
1076 Highland Colony Parkway (39157)
Post Office Box 6020
Ridgeland, Mississippi 39158
Telephone No.: (601) 856-7200
Facsimile No.: (601) 856-7626

**CERTIFICATE OF SERVICE**

I, Charles P. Copeland, hereby certify that on November 3, 2009, I electronically filed the foregoing Memorandum Of USAA Casualty Insurance Company In Support Of Motion For Partial Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following persons, and if such persons are not registered to receive filings pursuant to the CM/ECF system, the foregoing document will be delivered by other means:

> Tina L. Nicholson, Esq.
> Merlin Law Group, PA
> Three Riverway, Suite 1375
> Houston, TX 77056
> tnicholson@merlinlawgroup.com

This the 3rd day of November, 2009.

/s/Charles P. Copeland
Charles P. Copeland (MSB #102774)