IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HONORA HILLIER                                                                    PLAINTIFF

VS                                                           CAUSE NO. 1:08 CV 671LG-RHW

USAA CASUALTY INSURANCE COMPANY                                 DEFENDANT

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF LORI COX, USAA'S EXPERT

Rule 702's reliability component requires consideration of whether the proposed testimony is supported by appropriate validation--- that is, 'good grounds' based on what is known.  Daubert v. Merrill Dow Pharm, Inc., 509 U.S. 590 (1995).  Lori Cox's opinions in this case do not meet that standard.

To begin with, Cox was wrong about the basic assumption which underpinned all of her opinions.  Cox based all of her opinions on an entirely erroneous premise --- that Katrina's peak storm surge arrived at the Hillier property and destroyed the residence before the peak hurricane winds arrived.

In her second report[1], which she wrote, Cox affirmed her first report's opinion that the peak storm surge arrived at the property prior to the hurricane's peak winds:

> It is also our opinion based on the weather data available and the evidence observed that the strongest winds from Hurricane Katrina reached shore *after* the peak storm surge associated with the hurricane. This opinion is based upon evidence observed on-site, in the vicinity of the subject loss property and the unique characteristics of the storm. . . . The KCE Matrix

---

[1] Lori Burke Cox provided two expert reports in this case.  The first, dated January 11, 2006, is attached to the Motion as Exhibit A.  Michael Hummel authored that report and Cox peer reviewed and signed it. Cox wrote the second report, dated February 13, 2007, which is attached to the Motion as Exhibit B.

> report maintained that water could not possibly have caused this damage, primarily because the windstorm forces occurred prior to the floodstorm forces. However, finalized data from the National Weather Service addressed later in this report illustrate the storm surge arrived well before the winds of Hurricane Katrina.

Exhibit B to the Motion at 2 (emphasis in the original). Cox's central opinion is her belief that the storm surge destroyed the Hillier residence prior to the arrival of peak winds. Cox went on to admit that she had no idea how high Katrina's winds actually were:

> Accurate weather data in close proximity of this site is not available. It simply does not exist. . . [T]herefore, we acknowledge there are no measurements indicating the ultimate speed and directions of the winds from Hurricane Katrina at the peak of the storm in the area of loss.

Id. Cox went on to say that, since the wind speeds were unknown, "one simply cannot say that the wind speeds were such to cause extensive and catastrophic structural damage to any specific dwelling as alleged in the KCE Matrix report." Id.

Cox, however, did not address the opposite proposition --- that, since the peak wind speeds were unknown, one could not rule out that the wind speeds could have caused extensive and catastrophic structural damage. Cox relied entirely on her theory that the storm surge arrived at the Hillier property and destroyed the house before the peak winds arrived. Cox evidently assumed that the wind speeds were a moot point because, in her opinion, the surge had already destroyed the house prior to the arrival of the peak winds. Consequently, it made no difference how high the peak winds were.

In fact, Cox specifically stated her reliance on her belief that the peak storm surge arrived prior to peak winds:

> These documents indicate that the storm surge arrived well ahead of the maximum sustained winds and gusts of any substantial measurement. **This alone refutes any conclusion that high hurricane force winds caused**

>**significant damage to the Hillier dwelling prior to the arrival of storm surge.** In fact, the storm surge arrived before winds of any substantial strength. (10:00 a.m.) on August 29, 2005.

Id. at 5 (emphasis added).  She wrote:

>To assume the winds from the subject event arrived prior to the storm surge . . . would be remiss. . . . EFI respectfully maintains that the Hillier residence was damaged primarily by the storm surge from Hurricane Katrina prior to the arrival of the winds associated with Hurricane Katrina.

Id. at 7.  Cox believed that the storm surge arrived at the Hillier residence partly because she did not bother to find out the elevation of the property.  Her first report states that, "According to the insured the elevation of the first floor was approximately 17 feet above mean sea level."  Exhibit A to the Motion at 2.  Cox admitted that she never bothered to check the elevation of the residence. Exhibit C to the Motion at 19.  As a matter of fact, USAA's own meteorologist, Barry Keim, placed the general elevation of the Hillier's land at approximately 22 feet based on FEMA flood maps. Exhibit D to the Motion at 6.

In her second report, Cox noted that her information "shows the storm surge approaching 9 feet above mean sea level at approximately 2:00 a.m. Central Standard Time. This is clearly approximately 5 hours before winds in the region of 75 miles per hour are displayed on the . . . graph." Exhibit B to the Motion at 6.  Cox calculated that the storm surge was nine feet deep on the Hillier property by 2:00 a.m.  Cox entirely failed to take into account that the elevation of the Hillier property was at least 22 feet above mean sea level, mainly because Cox had never bothered to find out the true elevation of the property.  She merely assumed that, because the property was beachfront, it had a very low elevation and the storm surge was nine feet deep at the Hillier property by 2:00 a.m.

In fact, USAA's own meteorological expert, Barry Keim, prepared an analysis which proved that the peak hurricane winds battered the Hillier residence for approximately three hours --- from 7:00 a.m. to 9:45 a.m. ---prior to the arrival of the storm surge on the property. Exhibit D to the Motion at 8 (Table 1). USAA's own expert information reflects that, due to the high elevation of the Hillier property[2], not even one drop of the storm surge reached the Hillier property until sometime between 9:00 and 10:00 a.m., and the peak surge did not arrive at the Hillier property until 11:00 a.m., at which time it was less than five feet deep. Id.  Accordingly, Cox's basic assumption --- that the peak storm surge arrived at the Hillier residence and destroyed it prior to the arrival of the hurricane's peak winds --- was entirely wrong.

As discussed in detail in the Motion, Cox's assumption that the storm surge preceded the peak winds of Hurricane Katrina caused her to be lazy in her analysis of the storm surge forces. Cox opined that waves destroyed the Hillier residence without calculating the height of the waves.[3] Cox opined that the hydrodynamic force of the storm surge destroyed the house although she had no idea how strong that force actually was.[4]  Cox opined that the hydrostatic force of the storm surge destroyed the residence without knowing whether that force even existed.[5]  Cox opined that the fact that the house had withstood Hurricanes Camille and Elena proved that it was strong enough to withstand Katrina's winds, despite the fact that Cox did not know the wind speeds at the Hillier property during any of those hurricanes.[6]

---

[2] USAA admits that the Hillier property was at least 22 feet above mean sea level.
[3] For more detail, see Motion to Exclude the Testimony of Lori Cox at 6-7.
[4] For more detail, see Motion to Exclude the Testimony of Lori Cox at 5.
[5] For more detail, see Motion to Exclude the Testimony of Lori Cox at 5-6.
[6] For more detail, see Motion to Exclude the Testimony of Lori Cox at 7-8; and Exhibit B at 2.

There are no "good grounds" for Cox's opinions in this case. All of her opinions are based on a flawed premise --- that the peak storm surge arrived at the Hillier property and destroyed the residence prior to the arrival of the peak hurricane winds. USAA's own meteorological experts disproved Cox's basic premise. Because of her basic assumption that the storm surge arrived "well before" of peak winds, Cox did not bother to calculate the magnitude of the storm surge forces or even find out the wind speeds at the Hillier residence. Cox's opinions are not based on reliable facts and should be excluded as unreliable.

DATED: December 7, 2009

                              HONORA HILLIER,
                              Plaintiff

                      BY: _/s/ Tina L. Nicholson_____
                              TINA L. NICHOLSON, MSB#99643

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that the foregoing document has been filed with the CM/ECF system which will furnish a true and correct copy to all counsel of record in this case.

This the 7th day of December, 2009.

                                        */s/ Tina L. Nicholson*
                                        TINA L. NICHOLSON, MSB #99643

MERLIN LAW GROUP, P.A.
Three Riverway, Suite 1375
Houston, TX 77056
Tel: (713) 626-8880
Fax:   (713) 626-8881
tnicholson@merlinlawgroup.com